**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**MOHNS, INC.,**
        Appellant,

v.                                         Case No. 14-C-1280

**BRUCE A. LANSER, Trustee,**
        Appellee.

---

## DECISION AND ORDER

      This bankruptcy appeal presents the question of how to interpret certain provisions of the Bankruptcy Code governing the compensation of Chapter 7 trustees, which is a question that many courts have struggled with since the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). See, e.g., In re Rowe, 750 F.3d 392 (4th Cir. 2014); In re Ward, 418 B.R. 667 (W.D. Penn. 2009); In re Salgado-Nava, 473 B.R. 911 (B.A.P. 9th Cir. 2012); In re Scoggins, 517 B.R. 206 (Bankr. E.D. Cal. 2014); In re Luedtke, No. 07–70924, 2011 WL 806003 (Bankr. C.D. Ill. Feb. 28, 2011); In re Coyote Ranch Contractors, LLC, 400 B.R. 84 (Bankr. N.D. Tex. 2009); In re Phillips, 392 B.R. 378 (Bankr. N.D. Ill. 2008); In re McKinney, 383 B.R. 490 (Bankr. N.D. Cal. 2008).

      A Chapter 7 trustee is the main administrator of the bankruptcy estate and is responsible for performing an array of services over the life of a case, including liquidating any assets the debtor may have. See Richard I. Aaron, Bankruptcy Law Fundamentals 235–37(2013); David G. Epstein & Steve H. Nickles, Principles of Bankruptcy Law 24–26 (2007). Generally, Chapter 7 trustees are private parties, not employees of the federal

government, and are appointed to serve on specific Chapter 7 cases by the United States Trustee. Aaron, supra, at 234–35; Epstein & Nickles, supra, at 24–25. Trustees are compensated for their services in two ways. First, under 11 U.S.C. § 330(b), trustees receive a flat payment of $60 per case, which is paid out of the filing fee and other fees collected in bankruptcy cases. In practice, this $60 fee is all the compensation a trustee will receive for his or her services in a case in which there are no assets to liquidate. See John Silas "Si" Hopkins, III, Effective Review of Compensation in Large Bankruptcy Cases, 88 Am. Bankr. L.J. 127, 134–35 (2014). In cases in which there are assets to liquidate, however, a second form of trustee compensation is available. This is "reasonable compensation" awarded under 11 U.S.C. §§ 326(a) and 330(a). Section 326(a) provides that a court "may allow" reasonable compensation for the trustee's services, and that such compensation is "not to exceed" certain percentages of "all moneys disbursed or turned over in the case by the trustee." The limits are 25% of the first $5,000 disbursed or turned over, 10% of any amount over $5,000 and up to $50,000, 5% of any amount over $50,000 and up to $1 million, and 3% of any amount over $1 million. It is generally understood that reasonable compensation in asset cases is intended to serve, in part, as compensation for the trustee's work in no-asset cases. As one court explained:

> While it is axiomatic that chapter 7 trustee compensation for no-asset cases ($60 per case under § 330(b)) was never intended to be "reasonable" compensation for no-asset cases, Congress designed compensation for asset cases under § 330(a) to be sufficiently generous so as to fill the gap by subsidizing no-asset cases.
>
> The theory is that the U.S. trustee, who selects, assigns, and supervises trustees, will assign a portfolio of asset and no-asset cases that will on average reasonably compensate a trustee.

Scoggins, 517 B.R. at 218 (footnote omitted).

Section 330(a) contains additional provisions regarding the payment of reasonable compensation.  Prior to BAPCPA's enactment, § 330(a)(3) stated that, in determining the amount of reasonable compensation to be awarded to a Chapter 7 trustee (and to certain other participants in a bankruptcy case), "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors."  This provision then listed several factors that the court could consider, including the time spent on the services and the rates charged for such services.  Prior to BAPCPA, many courts interpreted the Code as mandating the "lodestar approach" to determining a Chapter 7 trustee's reasonable compensation, in which a trustee's fee is generally calculated by multiplying the reasonable number of hours worked by a reasonable hourly rate.  See Hopkins, supra, at 135.

BAPCPA did not remove § 330(a)(3) from the Code.  However, it removed Chapter 7 trustees from its ambit—as amended, § 330(a)(3) applies only to examiners, Chapter 11 trustees, and professionals who render services in a bankruptcy case.  At the same time, BAPCPA added a new provision to the Code, § 330(a)(7), which provides that "[i]in determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326."

These changes to § 330(a) have created uncertainty over how to determine a Chapter 7 trustee's reasonable compensation.  The problem stems primarily from the Code's directive to treat the trustee's compensation "as a commission, based on section 326."  The meaning of this language is clear to an extent—the trustee's compensation should be calculated as a percentage of all moneys disbursed or turned over in the case, rather than on a lodestar basis or other basis that focuses on the time the trustee spent on

3

the case, and the compensation may not exceed the limits set forth in § 326.  What is unclear is whether the court should in every case calculate the trustee's commission using the percentages specified in § 326, or whether the court retains discretion to award a lesser commission.  The courts that have considered the question have uniformly concluded that they retain some discretion to award a lesser commission.  The general rationale underlying this conclusion is based on § 330(a)(2), which states that courts may "award compensation that is less than the amount of compensation that is requested," along with the fact that § 326 states that the trustee's compensation is "not to exceed" the specified percentages.  See, e.g., Rowe, 750 F.3d at 398.  Courts also point to the fact that the Code still requires that the trustee's compensation be "reasonable," and they interpret this as granting them discretion to set the commission percentages on a case-by-case basis.  See, e.g., Scoggins, 517 B.R. at 212.  However, the conclusion that courts retain discretion to award compensation that is less than the maximum allowable commission leads to a second, more difficult question: what methodology is the court to employ when deciding whether to award the trustee the maximum commission or some lesser amount?  As amended by BAPCPA, the Code offers no clear guidance on this question.  And the courts have taken a variety of approaches, as explained below.

The Fourth Circuit and the Bankruptcy Appellate Panel for the Ninth Circuit have followed an approach taken by the United States Trustee Program, which is to presume that the trustee is entitled to the maximum commission and to reduce the commission only in "extraordinary circumstances."  Rowe, 750 F.3d at 397; Salgado-Nava, 473 B.R. at 921.  These courts have not precisely identified what constitutes extraordinary circumstances, but generally such circumstances are things like the trustee not performing his or her

4

duties, performing them negligently, or delegating a substantial portion of those duties to an attorney or other professional. See Rowe, 750 F.3d at 397. Some other courts have declined to adopt the "extraordinary circumstances" test but still presume that a trustee is entitled to the maximum commission. Instead of holding that the presumption may be rebutted only in extraordinary circumstances, these courts examine various factors to determine whether a lesser commission is appropriate. Factors identified by these courts include "the time and effort expended by the trustee on the case," Ward, 418 B.R. at 678, and whether awarding the maximum commission would result in an "unreasonably disproportionate" fee, Scoggins, 517 B.R. at 227, a fee that is "disproportionate to the actual services rendered," Luedtke, 2001 WL 806003, at *3, or a fee that is "substantially disproportionate to the value of the trustee's services," McKinney, 383 B.R. at 494. See also Coyote Ranch Contractors, 400 B.R. at 94–95 (seemingly adopting presumption that trustee is entitled to maximum commission but stating that commission should be reduced when it is disproportionate or inequitable). One bankruptcy judge has rejected the idea that the trustee is presumptively entitled to the maximum fee. See Philliips, 392 B.R. at 380. This judge has concluded that the trustee's compensation should be adjusted based on the bankruptcy court's assessment of the trustee's performance:

> The maximum amount should only be awarded in those instances of truly excellent work and efforts by a trustee. Something less computed at a lower percentage . . . should be considered where the efforts and results are very good; lesser in instances where the work is less difficult with attendant results; lower still where the services and results are merely good or average; and even less when the performance [is below average]. Stripped to a simplistic analogy from school experiences shared by most, a 5% commission should be awarded for "A" work and so on down the line. Awarding less in cases where little work or skill was required avoids overcompensation to trustees at the expense of dividend dilution to other allowed claimants on the same priority or lower.

5

Id. at 391–92.

In the present case, the Chapter 7 trustee asked the bankruptcy judge to award him reasonable compensation in the amount of $28,030.33. This amount was calculated using the percentages in § 326. Mohns, Inc., the debtors' largest unsecured creditor, objected to the trustee's request and argued that the trustee was not entitled to the maximum allowable commission. Mohns also asked for an evidentiary hearing on its objection. In response to Mohns's objection, the trustee urged the bankruptcy court to adopt the extraordinary-circumstances test of cases such as Rowe and Salgado-Nava and further argued that no such circumstances were present in this case. The bankruptcy judge sided with the trustee, explicitly adopted the extraordinary-circumstances test as it was stated by the Fourth Circuit in Rowe, and determined that no extraordinary circumstances were present in this case. Tr. of Sept. 7, 2014, at 11–13. The judge also determined that an evidentiary hearing on whether extraordinary circumstances were present was unnecessary. Id. at 13–14.

On appeal, Mohns urges me to adopt the approach to trustee compensation taken by the bankruptcy judge in Phillips—i.e., to hold that the trustee is not presumptively entitled to the maximum allowable commission and to require the bankruptcy court to determine the commission by "grading" the trustee's performance. Mohns also urges me to require the trustee to submit evidence to the bankruptcy court concerning the amount of time he spent on various tasks in this case, to require the bankruptcy court to hold an evidentiary hearing on the subject of the trustee's performance, and to require the bankruptcy court to "make detailed findings of fact explaining the rational relationship between the amount of the commission awarded to the trustee and the type and level of

6

services rendered." Br. at 30. Finally, Mohns argues that I should hold that the trustee is not allowed to have the proceeds from the sale of the largest asset in this case—the debtors' house—figured into his commission. Mohns argues that the house should be excluded from the trustee's compensation "because the trustee opposed marketing the house until after the bankruptcy court ordered him to hire a broker, and then the broker and title company performed all the work needed to sell the house." Id.

I conclude that the bankruptcy court correctly presumed that the trustee was entitled to a commission calculated using the formula in § 326. In removing Chapter 7 trustees from § 330(a)(3) and directing courts to treat the trustee's compensation as a commission, Congress made clear that a trustee's compensation should be determined on the basis of a percentage, rather than on a factor-based assessment of the trustee's services or on the basis of the lodestar method. Having directed the courts to employ a percentage, Congress next needed to specify that percentage, and that is what the language "based on section 326" accomplishes—the court is directed to calculate the commission by using the percentages specified in § 326. Thus, the court should award 25% of the first $5,000 disbursed or turned over, 10% of the next $45,000, and so forth. Now, the phrase "based on section 326" is vague, and it could be read as allowing a court to calculate the commission by using percentages that are less than those specified in § 326. If, for example, a court decided to subtract 1% from each of the percentages in § 326, the resulting commission could still fairly be said to be "based on section 326," as the percentages specified in § 326 were used as the starting point for the calculation. But the Code does not contain any instructions for deciding whether a Chapter 7 trustee's commission should be calculated using lesser percentages. The Code does not, for

example, instruct a court to assess the quality of the trustee's performance and then pick percentages that seem to be in line with the court's assessment. Given the absence of instructions for selecting the proper percentages to apply in a particular case, it seems likely that Congress's directive to base the commission on § 326 is a directive to apply the percentages specified in § 326 in every case. In other words, had Congress wanted courts to adjust the percentages on a case-by-case basis, it would have specified the reasons the courts should consider when deciding on the proper percentages. Since it did not specify any reasons for adjusting the compensation of a Chapter 7 trustee, § 330(a)(7) is best understood as a directive to simply apply the formula in § 326 in every case.[1]

It is true that the Code still instructs courts to award only "reasonable" compensation. But "reasonable" is not defined, and beyond instructing courts to treat reasonable compensation as a commission based on § 326, the Code contains no instructions for determining what constitutes reasonable compensation of a Chapter 7 trustee. To the contrary, the BAPCPA amendments removed Chapter 7 trustees from § 330(a)(3), the only Code provision besides § 330(a)(7) containing any guidance as to the meaning of "reasonable compensation." Thus, Congress's retention of the word "reasonable" should not be viewed as support for the notion that a court may adjust the commission percentages on a case-by-case basis. Rather, with respect to Chapter 7

---

[1]In contrast, Congress did specify reasons for adjusting the compensation of Chapter 11 trustees, as Chapter 11 trustees remain subject to § 330(a)(3). Thus, in the case of a Chapter 11 trustee, the court should follow § 330(a)(7) and calculate the commission pursuant to the formula in § 326. Then, the court should adjust the commission by applying the § 330(a)(3) factors.

trustees, reasonable compensation should be understood as being a commission calculated under the formula in § 326.

Some courts have determined that the parts of § 330(a) that prohibit a court from awarding compensation for unnecessary or duplicative services grant a court discretion to reduce a Chapter 7 trustee's commission.[2] See Ward, 418 B.R. at 678; Scoggins, 517 B.R. at 212. However, because these parts of the Code appear to be designed to prevent a professional who is paid on an hourly or per-transaction basis from spending time on duplicative or unnecessary tasks in an effort to inflate his or her fee, it is doubtful that they have much of a role to play in fixing the compensation of a Chapter 7 trustee, who is paid a single commission for all of the services he renders throughout the life of a bankruptcy case. The trustee will receive the same commission no matter how much time he spends on the case, and therefore he has no incentive to spend time on unnecessary or duplicative tasks and harms only himself if he does so. Thus, the commission-based nature of the trustee's fee by itself prevents the court from awarding compensation to a Chapter 7 trustee for duplicative or unnecessary services, and so the court does not need to separately apply the parts of the Code forbidding compensation for such services.[3]

---

[2]Those parts are § 330(a)(1)(A), providing that reasonable compensation may be allowed only for "actual, necessary services," and § 330(a)(4)(A), which states that the court shall not allow compensation for "unnecessary duplication of services" or services that were not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case."

[3]The conclusion that § 330(a)(4)(A) and the "actual, necessary" limitation in § 330(a)(1)(A) do not have much of a role to play with respect to Chapter 7 trustee compensation does not render those parts of the Code superfluous, because they still apply to persons besides Chapter 7 trustees who may be paid reasonable compensation. Also, these provisions might apply to a Chapter 7 trustee if he administers a case as an asset case when it is clear that he should have administered it as a no-asset case. See

I must also account for § 330(a)(2), which states that "[t]he court may, on its own motion or on the motion of [a party in interest], award compensation that is less than the amount of compensation that is requested." This provision applies to Chapter 7 trustees as well as other persons allowed reasonable compensation under § 330. But what role should this provision play in determining the compensation of a Chapter 7 trustee? The Code provides no guidance. Moreover, the text of § 330(a)(2) is so broad that it seems to permit a court to award less than reasonable compensation—the text states without qualification that the court may award compensation that is less than the amount requested, and thus it implies that a court may reduce even a reasonable request. In light of the breadth of § 330(a)(2), which seems to allow a court to reduce a fee request for almost any reason it sees fit, any of the post-BAPCPA standards that courts have applied when reducing a Chapter 7 trustee's compensation could be said to be consistent with the Code. But because Congress has not identified any circumstances in which a court <u>should</u> reduce the compensation of a Chapter 7 trustee below the amount given by the formula in § 326, courts should be reluctant to award less than that amount. The absence of instructions for reducing that amount implies that Congress viewed a commission calculated under the formula in § 326 as the right amount of compensation in nearly every case.

Accordingly, I agree with the courts that have concluded that a Chapter 7 trustee is presumed to be entitled to a commission calculated under the formula in § 326, and I reject

---

U.S. Trustee, Handbook for Chapter 7 Trustees, at 4-1 (Oct. 1, 2012). In this circumstance, the trustee's services could be deemed altogether unnecessary, and for this reason the court might award the trustee no commission at all and leave him with the $60 fee for administering a no-asset case.

Mohns's invitation to apply the approach of the bankruptcy court in Phillips, which requires the court to grade the trustee's performance and adjust the commission in every case. I also agree that § 330(a)(2) grants the court the power to reduce a trustee's commission below the amount given by the formula in § 326. But again, I conclude that courts should exercise this power sparingly. To resolve this case, I do not have to identify every circumstance that might or might not be grounds for reducing a commission. However, some of Mohns's arguments are based on grounds for reducing a commission that have been identified in other cases, and therefore I will address those grounds.

First, Mohns argues that the bankruptcy court should have reviewed the trustee's time sheets and determined whether the amount of time he spent on the case, and how he spent that time, justified the commission he requested. See Br. at 19. In so arguing, Mohns seems to be relying on cases holding that a commission may be reduced when it results in compensation that is "disproportionate" to either the time the trustee spent on the case or the value of his services. See, e.g., Scoggins, 517 B.R. at 207; Luedtke, 2011 WL 806003 at *5; Coyote Ranch Contractors, 400 B.R. at 95; McKinney, 383 B.R. at 492. In my view, however, the cases that focus on whether the commission is in some sense disproportionate are flawed. The primary problem is that, other than the formula in § 326, the Code contains no guidance as to what constitutes "proportionate" compensation. Thus, when a judge reduces a commission that he or she deems disproportionate for some reason, the judge necessarily applies his or her own conception of how trustees should be compensated rather than any policy adopted by Congress. The better approach is for a

11

court to simply apply the formula in § 326 and leave it to Congress to amend the statute if it decides that the current system results in overcompensation of Chapter 7 trustees.[4]

A second problem with the disproportionate test is that a court's reducing a trustee's compensation on the ground that the compensation is in some sense disproportionate to the amount of time the trustee spent on the case is inconsistent with Congress's directive to treat the compensation as a commission. Commission percentages are not usually determined at the end of an engagement by examining the amount of time the professional spent on the matter. Rather, such percentages are usually agreed to at the beginning of an engagement, before the actual amount of time spent on the matter could even be known. Moreover, as noted, a Chapter 7 trustee's commission in an asset case is intended, in part, as compensation for work he or she has done in no-asset cases. A court's reducing a commission based on the amount of work the trustee performed in the particular asset case before it would thus disrupt the total compensatory scheme devised by Congress for Chapter 7 trustees.[5] For these reasons, courts should avoid adjusting a

---

[4]Under the current system, it might be appropriate to reduce a commission when applying the formula in § 326 would produce an absurdly high fee. One commentator describes a case in which the trustee's commission under § 326 would have been $130 million. Hopkins, supra, n. 88. No rational person could think that Congress intended this result. But cases involving such absurdly high fees will be rare, and therefore courts should not routinely review commissions for proportionateness.

[5]One commentator explains that this system is not unfair to creditors in asset cases:

The skill and experience that each panel trustee acquires by working on all the cases that he or she is assigned improve the administration of the asset cases to the benefit of the creditors in those cases. The extra benefit that the creditors receive from having a skilled and experienced trustee offsets the cost to those creditors of the extra benefit that the trustee receives in the form of a percentage based commission, which in turn helps to compensate the trustee for the time and effort that was necessary to acquire the skill and

trustee's commission based on the amount of time or effort he or she spent on a single case.

Next, Mohns argues that a bankruptcy court may reduce a commission by excluding the proceeds of certain assets from the calculation of the commission if the proceeds were obtained without substantial effort by the trustee. As applied to this case, Mohns contends that the bankruptcy court should have excluded the proceeds of the debtors' house from the calculation of the commission because the trustee hired a broker to sell the house, and then the broker and the title company supposedly performed all the work needed to sell the house. Mohns contends that this result is supported by § 330(a)(4)'s prohibition on compensation for unnecessary or duplicative services. However, as I have already explained, the commission-based nature of a Chapter 7 trustee's compensation already prevents a court from awarding compensation for unnecessary or duplicative services, and therefore a court should not reduce a commission under § 330(a)(4). Moreover, the trustee's commission is compensation for all the work that he has done in the bankruptcy case and in other, no-asset cases, not for work that the trustee may or may not have done with respect to particular assets. Thus, the fact that the trustee may have done little or no work with respect to a particular asset is not grounds for excluding the proceeds of that asset from the calculation. Finally, excluding the proceeds of an asset from the calculation would be inconsistent with the text of § 326, which states that the commission must be calculated on "all moneys disbursed or turned over in the case."

---

experience that produced the benefit to the creditors.
Hopkins, supra, n. 92.

The remaining issues raised by Mohns on appal are procedural. First, Mohns points out that when the trustee applied for reasonable compensation, he did not submit an application that complied with Federal Rule of Bankruptcy Procedure 2016(a). That rule, in relevant part, provides that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." In the present case, the trustee's application did not contain a detailed statement of the services he rendered and the time he expended on the case. Rather, the trustee simply requested the amount derived by applying the percentages stated in § 326 to the total amount of cash distributed. Mohns contends that the bankruptcy court erred by awarding the trustee compensation without requiring him to comply with Rule 2016. Second, Mohns contends that the bankruptcy court erred by not holding an evidentiary hearing on Mohns's objection to the trustee's application. Finally, Mohns contends that the bankruptcy court erred by failing to make detailed findings of fact and conclusions of law.

In general, Mohns's procedural objections are related to its substantive argument that I should adopt the approach to trustee compensation taken in Phillips. Under that approach, the trustee would have been required to submit a detailed statement of the services he rendered, and then the bankruptcy court would have been required to review the statement, hold a hearing on any factual disputes concerning the trustee's performance, and make detailed findings in which the court "graded" the trustee's performance. I have rejected the Phillips approach, and so to the extent Mohns's procedural objections depend on Philips, they are no longer relevant. However, Mohns

14

contends that its procedural objections are relevant even though I have rejected Phillips. See Br. at 30 (arguing that "under any standard applied by the courts, including the standards set forth in Rowe," the bankruptcy court erred by not requiring the trustee to comply with Rule 2016 and by not making detailed findings of fact). For the reasons stated below, I conclude that Mohns's procedural objections are not grounds for vacating the bankruptcy court's order.

First, while it may be true that the trustee's application did not comply with Rule 2016, the bankruptcy court did not err by failing to require compliance. Nothing in that rule, and nothing in the Code or any other bankruptcy rule, states that a court may not award reasonable compensation to a trustee unless the trustee first submits an application that complies with Rule 2016 in all respects. To the contrary, Bankruptcy Rule 9005 incorporates Federal Rule of Civil Procedure 61, which provides that "[a]t every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." And in this case, the trustee's failure to submit a detailed statement of the services he performed and the time he spent on the case did not affect Mohns's substantial rights. That is because, as I have determined, when the trustee's compensation is treated as a commission, how much time the trustee spends on the case, and how that time is spent, is irrelevant—the commission is determined by the total amount of cash disbursed or turned over, not by the trustee's time sheets. Thus, requiring the trustee to submit a detailed description of the time he spent on this case would have been pointless.

For similar reasons, the bankruptcy court did not err by failing to hold an evidentiary hearing or make detailed findings of fact. Because the trustee's commission was fixed by

15

statute, there was nothing for the court to address at a hearing, and no need for the court to make findings of fact. Perhaps an evidentiary hearing and findings would have been needed if there had been a factual dispute over what qualified as "moneys disbursed or turned over in the case," but there was no such dispute in this case.

Accordingly, in all respects, the orders of the bankruptcy court are **AFFIRMED**.

Dated at Milwaukee, Wisconsin, this 12th day of January 2015.

                                    s/ Lynn Adelman
                                    _____
                                    LYNN ADELMAN
                                    District Judge